UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| SCOTT SMITH,<br><br>                         Plaintiff,<br><br>v.<br><br>GOLDEN CHINA OF RED WING, INC.,<br>and VU THU LAM,<br><br>                         Defendant. | Civil No. 17-1862 (JRT/HB)<br><br>**FILED UNDER SEAL**<br>**MEMORANDUM OPINION**<br>**AND ORDER** |

Padraigin Brown, **BROWNE LAW LLC**, 8530 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, for plaintiff.

Brian J. Linnerooth, Edward P. Sheu, **BEST & FLANAGAN LLP**, 60 South Sixth Street, Suite 2700, Minneapolis, MN 55402, for defendants.

Plaintiff Scott Smith brought this action against Golden China of Red Wing, Inc. ("Golden China") and Vu Thu Lam[1] for violations of the Americans with Disabilities Act ("ADA"). Both parties have filed Motions for Summary Judgment and motions to exclude each side's expert testimony. Because Smith failed to show that bringing the Golden China parking lot into compliance is readily achievable, the Court will grant Defendants' Motion for Summary Judgment and deny the Motions to exclude each parties' experts as moot.

---

[1] Lam changed his name to George in 2002 when he became a United States citizen. (Decl. of George Lam ¶ 1, Oct. 12, 2017, Docket No. 24.)

# BACKGROUND

Scott Smith, a Burnsville, Minnesota resident, suffers from arthrogryposis and uses a wheelchair for mobility. (Am. Compl. ¶¶ 8-9, Oct. 31, 2017, Docket No. 42 Decl. of Edward Sheu ("Sheu Decl.") ¶ 2, Dec. 14, 2018, Docket No. 91, Ex. 1 ("Smith Dep.") at 4, Dec. 14, 2018, Docket No. 91-1.) Golden China is a restaurant owned and operated by George Lam since 1995. (Am. Compl. ¶¶ 10-11; Decl. of George Lam ¶ 2.)

Smith alleges that Defendants are not and were never in compliance with the ADA, the American with Disabilities Act Accessibility Guidelines (the "ADAAG"), and the Minnesota Human Rights Act ("MHRA"). (Am. Compl. ¶ 29.) This Court dismissed the MHRA claim on July 6, 2018. (Mem. Op. Order at 11, July 6, 2018, Docket No. 79.)

On May 25, 2017, Smith traveled from his Burnsville, Minnesota home to Red Wing, Minnesota—a roughly fifty mile trip. (Decl. of Scott Smith ("1st Smith Decl.") ¶ 5, Dec. 11, 2017, Docket No. 55; Smith Dep. at 10.) Smith made this trip with Peter Hansmeier, a paralegal at the law firm that represents Smith in the instant action, specifically to test businesses in the Red Wing area for ADA compliance. (Smith Dep. at 8, 10.) Smith visited Golden China during this trip and noted that there were no fully compliant accessible parking spaces. (1st Smith Decl. ¶¶ 6-7.) Smith requires fully compliant accessible parking spaces to safely transfer between his car and wheelchair. (*Id.* ¶ 7.) Smith did not attempt to exit his vehicle and use the ramp to enter the restaurant building. (*Id.* ¶ 12.) Instead, Smith determined based on his experience that he "would have been unable to enter the premises and dine or order on an independent basis, and [he] was deterred from attempting what [he] concluded would have been an unsafe and futile

attempt to enter." (*Id.*) Smith plans to return to Golden China once it is fully compliant with the ADA. (*Id.* ¶ 16.)

Smith is not a fan of Chinese food and does not eat it when he is at home in Burnsville. (Smith Dep. at 9.) Smith asserts that he is in and around the Red Wing area "often" and that, although he is not a fan of Chinese food, he would return to Golden China if his family and friends patronized it. (*Id.* at 28-29.) Smith states that he is in the area "fairly frequently" because his brother lives in Winona and he visits his brother. (*See id.* at 11.) He also testified that he is in the area when he visits Treasure Island Casino. (*Id.*)

Smith identified several ADA violations, including: (1) the signage indicating accessible space was posted too low to the ground; (2) there was an insufficient number of accessible parking spaces; (3) there was insufficient striping for accessible spaces; (4) the accessible space lacked an adjacent access aisle; and (5) the ramp near the reserved parking space had impermissible slopes and landing. (Am. Compl. ¶¶ 13-17.) Because Golden China remedied 1, 3, and 4, the Court dismissed those issues as moot. *Smith v. Golden China of Red Wing, Inc.*, Civil No. 17-1862, 2018 WL 3325907 at *3 (D. Minn. July 6, 2018). The Court also found that Golden China was only required to provide one accessible space—which it did—and dismissed this issue. *Id.* The only issue remaining is whether the incline leading from the parking lot to the walkway in front of the restaurant is ADA compliant.[2]

---

[2] The Court refers to the ramp or curb ramp as "the incline leading from the parking lot to the walkway" because parties dispute whether the incline is a ramp or curb ramp for ADA compliance purposes. This issue is, however, not relevant to the disposition of this case.

Defendants concede that the incline leading from the parking lot to the walkway does not strictly comply with ADA standards, however, Defendants assert that bringing the parking lot into strict ADA compliance is not readily achievable. (*See* Decl. of Julee Quarve-Peterson ¶ 9, Oct. 12, 2017, Docket No. 22.) Defendants solicited bids from area contractors and found that bringing the ramp into compliance would require $29,000 to $39,000 worth of construction. (*See* Decl. of Gerald Aslakson ("Aslakson Decl.") ¶ 8, 10, Dec. 14, 2018, Docket No. 97.) Golden China only received one bid, as other contractors in the area declined to provide one. (Decl. of Julee Quarve-Peterson ("Quarve-Peterson Decl.") ¶ 12, Dec. 14, 2018, Docket No. 96.) This bid included the costs of razing and resurfacing the parking lot, and substantial site planning to redirect the parking lot's drainage. (Aslakson Decl. ¶¶ 7-11 & Ex. 1 at 2, Docket No. 97-1.) Linda Cheung, representative for Golden China, testified that making the renovations will likely put Golden China out of business. (Sheu Decl. ¶ 8, Ex. 7 ("Cheung Dep.") at 46, Dec. 14, 2018, Docket No. 92.)

Smith asserted that the Golden China property is worth over $████. (Sheu Decl. ¶ 17, Ex. 16 at 1, 7, Dec. 14, 2018, Docket No. 91-13.) He also asserted that there is no mortgage on the property. (Cheung Dep. at 27-28.) Further, Smith alleged that Defendants could possibly qualify for two tax benefits: the Disabled Access Credit, worth up to $5,125 per year, 26 U.S.C. § 44, and another deduction of up to $4,750 from their income, 26 U.S.C. § 190; (Pl.'s Mem. in Supp. at 16, Jan. 7, 2019, Docket No. 104.)

Golden China's income and other financial information is summarized in the table below.

| Year | Gross Income | Gross Profits | Net Income | Salary Paid to Vu Thu Lam | Rent paid to Vu Thu Lam |
|------|--------------|---------------|------------|---------------------------|-------------------------|
| 2015 | ██           | ██            | ██         | ██                        | ██                      |
| 2016 | ██           | ██            | ██         | ██                        | ██                      |
| 2017 | ██           | ██            | ██         | ██                        | ██                      |

(Cheung Dep. at 56, 79, 100.)

Golden China's parking lot was constructed in the 1970s. In 2001 or 2002 Golden China resurfaced the parking lot. (Cheung Dep. at 14.) The resurfacing cost about $7,000 or $8,000 and did not involve regrading the parking lot. (*Id.* at 44.) The old surface was scratched up to create a better bonding surface, then a new layer was put on top. (*Id.* at 48.) Defendants re-striped the parking lot every few years as the paint faded away. (*Id.* at 13.) During the summer Defendants filled potholes in the parking lot. (*Id.* at 18.)

## DISCUSSION

**I.   SUMMARY JUDGMENT**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

    **A.    Standing**

For a court to have subject matter jurisdiction, a claim must involve an actual case or controversy. U.S. Const. Art. III, § 2. A plaintiff has standing to sue when: (1) he or she suffered a "concrete and particularized" injury; (2) the injury is "fairly traceable" to the defendant's actions; and (3) the injury is "likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). However, a case may become moot if the plaintiff no longer has "a personal stake in the outcome of the controversy." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). "To allege an injury in fact that confers standing to seek injunctive relief, a plaintiff must face a threat of ongoing or future harm." *Smith v. Bradley Pizza, Inc.*, 314 F. Supp. 3d 1017, 1022 (D. Minn. 2018) (citing *Park Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000).

"For an ADA claim, a party's intention to return to a facility that allegedly contains architectural barriers is a threat of future harm that is an injury in fact." *Id.* "In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations omitted).

First, Defendants argue that Smith fails the first element—that Smith has not suffered an injury-in-fact—because he cannot show that he faces a threat of future harm. Defendants point to the fact that Smith himself testified to not liking or eating Chinese food to show that Smith is unlikely to return to Golden China. Smith, on the other hand, testified that he visits Red Wing and has plans to return to Golden China should it remove the architectural barrier. Smith stated that he visits his brother in Winona, and, during the drive past Red Wing, will stop in Red Wing. He also testified that he visits Red Wing when his family visits Treasure Island Casino, which is nearby. The Court credits Smith's testimony at this stage and finds that he has met his burden to show a threat of future harm.

Second, Defendants argue that Smith's injury is merely "conjectural" or "hypothetical," *Lujan*, 504 U.S. at 560, because he did not actually try to patronize Golden China and was then harmed by being prevented from doing so. Defendants argue that Smith is able to navigate ramps at his residence that violate the ADA as badly or worse than Golden China's incline. Essentially, Defendants ask this Court to recognize a rule requiring that if, in an ADA plaintiff's everyday activity, he or she is able to navigate non-compliant ADA architectural barriers, then such a plaintiff cannot show that the same barrier elsewhere harmed him or her. The Eighth Circuit has not adopted such a rule, and the Court declines to do so here.

B. **ADA Compliance**

"An ADA discrimination claim 'requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate

a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA.'" *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 956 (8th Cir. 2018) (quoting *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)). The parties do not dispute that Smith has established the first two elements; thus, only the final element is in dispute.

As relevant here, the ADA defines discrimination as "a failure to remove architectural barriers . . in existing facilities . . . where such removal is readily achievable;" or, if removal is not readily achievable, "failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv)-(v).

The parties dispute which section of the ADA regulations applies to Golden China. Smith argues that the resurfacing of the parking lot in 2001/2002 was an alteration and that Defendants are therefore subject to 28 C.F.R. § 36.402, which requires that when a facility is altered it must comply with the ADAAG "to the maximum extent feasible." Defendants, however, argue that, as an existing facility, they are covered by 28 C.F.R. § 36.304(d)(3). If § 36.304(d)(3) applies, they are grandfathered in and must only comply where removal of architectural barriers is "readily achievable."

Although Defendants contend that the 2001/2002 resurfacing of the parking lot is not an alteration, the law makes clear that resurfacing a parking lot is an alteration. An alteration is "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof. . . . Normal maintenance . . . are not alterations unless they affect the usability of the building or

facility." 28 C.F.R. § 36.402(b)(1). The resurfacing of the lot was to make it smoother and easier to use. Moreover, the 2010 ADAAG specifically defines alteration to include "resurfacing of circulation paths or vehicular ways." 2010 ADA Standards for Accessible Design at 44, Dept. of Justice, Sept. 15, 2010. Although the 2010 ADAAG was not the operative standard when the parking lot was resurfaced, it is persuasive here. Lastly, Defendants testified that they would fill potholes and re-stripe the parking lot as necessary—general maintenance work done on a periodic basis. The resurfacing, however, was a one-time event that required some scratching of the original pavement, and then laying down a new layer of asphalt. It has not been done again in nearly two decades. The Court therefore finds that the 2001/2002 resurfacing of the Golden China parking lot was an alteration.

Regardless of whether the resurfacing was an alteration or maintenance, § 36.304(d)(3) applies in this. Section 36.304(d)(3) was approved on September 15, 2010, well after July 26, 1991—the date when § 36.402 was initially published and approved and represents the agency's most recent interpretation of the ADA's provisions. Because § 36.304 was passed after § 36.402, the Court finds that § 36.304 supercedes § 36.402 to the extent that they are contradictory. Where § 36.304(d)(2)(ii)(A) requires that any noncompliant facilities in existence before March 15, 2012 comply with the ADA where "readily achievable" and § 36.402(a) requires noncompliant facilities altered after January 26, 1992 to comply to the "maximum extent feasible" they are contradictory when applied to facilities in existence before March 15, 2012 and altered after January 26, 1992. Thus,

§ 36.304(d)(2)(ii)(A) applies in those situations, and here. Accordingly, Defendants must remove barriers where readily achievable.

To avoid summary judgment, Smith must make "a sufficient showing that barrier removal is readily achievable." *Disability Support Alliance v. Heartwood Enterprises, LLC*, Case No. 15-cv-529 (PAM/FLN), 2016 WL 740411, at *5 (D. Minn. Feb. 24, 2016), *aff'd* 885 F.3d 543 (8th Cir. 2018). To meet his burden at summary judgment, plaintiff must "present evidence of: (1) a specific design to remove the barriers alleged; (2) the cost of removal or the proposed remedy; and (3) the effect on the finances and operation of the facility." *Id.* at *6.

Barrier removal is readily achievable when it is "easily accomplished and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a). Considerations include: (1) the nature and cost of the action needed; (2) the overall financial resources of the facility, the number of persons employed there, and the impact of such action on the operation of the facility; (3) the overall financial resources of the facility and its size (including number of employees, and number type and location of facilities); and (4) the type of operation of the covered entity. 42 U.S.C. § 12181(9) (2018).

Golden China is a small business with two employees and one place of business. Golden China had losses of $▇▇▇▇ in 2015, and $▇▇▇▇ in 2017. In 2016 it made profits of $▇▇▇▇. Golden China requested bids from local firms and received only one quote—from Aslakson's Services, Inc. The quote showed that it would cost between $29,000 and $39,000 to bring the lot into compliance with the 2010 ADAAG. Defendants argue this is not readily achievable because they do not have sufficient funds. Further, Cheung testified

-10-

that if Defendants were required to bring the parking lot into compliance with the ADAAG, it would likely put them out of business.

Smith argues that compliance is readily achievable because: (1) Golden China could mortgage the restaurant property to obtain funds to pay for the cost of removal; (2) Golden China would qualify for tax incentives, thus lowering the cost; (3) with careful planning, Golden China could spread the costs over two years and claim twice the tax deductions; and (4) Golden China would have more money to spend on removal if Lam stopped paying himself a $███████ wage and $███████ in rent. Smith also speculates that Defendants have the money to pay for removal because they were able to pay for this lawsuit. Cheung testified that even if Golden China were to take out a mortgage, it does not have the funds to make payments on that mortgage. Furthermore, it would be unreasonable to require Lam to stop receiving a wage and rental income from Golden China, especially because what he receives is less than $███████ each year, and in 2017 was less than $███████. Lastly, Smith failed to produce any evidence that Golden China could pay for the requested barrier removal outside of the bare assertion that Golden China's ability to pay for litigation shows its ability to pay for barrier removal. This argument fails because the two are not comparable, and Smith failed to show how Golden China has been paying for litigation costs. Furthermore, since the start of litigation in 2017, Golden China has suffered a net loss even despite decreased rental payments to Lam.

In *Disability Support Alliance v. Heartwood Enterprises, LLC*, the Eighth Circuit rejected the argument that, without evidence to show that the defendant was in a financial position to pay for barrier removal, a plaintiff could meet its burden to show a barrier

-11-

removal was readily achievable by arguing that the defendant could qualify for tax benefits. 885 F.3d at 548. Here, Defendants have provided significant evidence that bringing the ramp into compliance with the 2010 ADAAG would cost between $29,000 and $39,000, and that they do not have the financial means to pay for such remediation. Smith relies on the same Aslakson bid to show that it is technically feasible to remove the architectural barrier, however, Smith does not present any evidence to show that doing so is readily achievable. The Court finds that Smith has failed to carry his burden to show that the barrier removal he seeks is readily achievable. Thus, the Court will deny Smith's Motion for Summary Judgment, and grant Defendant's Motion for Summary Judgment.[3]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment and to Strike Peter Hansmeier's Testimony [Docket No. 89] is **GRANTED** in part and **DENIED** in part as follows:

    a. The Motion for Summary Judgment is **GRANTED** in full.

---

[3] Because the Court will grant summary judgment for Defendants, the Court will also deny the two motions to exclude expert testimony as moot. The Court notes, however, that it would have granted the Motion to Strike Peter Hansmeier's Testimony and that the Court's grant of summary judgment in favor of Defendants would have further been supported. Hansmeier does not have any training or experience in the ADA compliance industry outside of his involvement in litigation. Thus, he is not qualified to serve as an expert witness.

    b. The Motion to Strike Peter Hansmeier's Testimony is **DENIED** as moot.

2. Plaintiff's Motion for Summary Judgment and Motion to Exclude Expert Testimony [Docket No. 102] is **DENIED**.

**IT IS FURTHER ORDERED** that this Order shall be filed under seal and the parties are to show cause on or before ten (10) days from the date of this Order why the Court should not unseal the Order and to specify any portion of the Order warranting redaction.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: July 22, 2019                      _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                                  Chief Judge
                                                            United States District Court